```
                   UNITED STATES BANKRUPTCY COURT
                SOUTHERN DISTRICT OF NEW YORK (NEW YORK)

                                    .
IN RE:                              .  Case No. 22-10946-mew
                                    .  Chapter 11
ODONATA LTD,                        .
                                    .
              Debtor.               .
. . . . . . . . . . . . . . . . . . .
ODONATA LTD,                        .  Adv. No. 22-01121-mew
                                    .
              Plaintiff,            .
                                    .  One Bowling Green
v.                                  .  New York, NY 10004-1408
                                    .
BAJA 137 LLC,                       .  Monday, December 12, 2022
              Defendant.            .  2:03 p.m.
. . . . . . . . . . . . . . . . . . .


          TRANSCRIPT OF PRETRIAL CONFERENCE, CASE CONFERENCE
                BEFORE THE HONORABLE MICHAEL WILES
                UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:
                        Pick & Zabicki
                        By:  DOUGLAS J. PICK, ESQ.
                        369 Lexington Avenue
                        New York, New York 10017
                        (212) 695-6000

APPEARANCES CONTINUED.


Audio Operator:         K.B., ECRO


Transcription Company:  Access Transcripts, LLC
                        10110 Youngwood Lane
                        Fishers, IN 46048
                        (855) 873-2223
                        www.accesstranscripts.com



     Proceedings recorded by electronic sound recording,
transcript produced by transcription service.
```

APPEARANCES (Continued):

For Baja 137 LLC:
Hamra Law Group
By:  KEVIN S. JOHNSON, ESQ.
1 Linden Place
Great Neck, NY 11021
(646) 590-0571


For Angel Nieves:
Reich, Reich, & Reich P.C.
By:  JEFFREY REICH, ESQ.
235 Main Street, Ste. 450
White Plains, NY, 10601
(914) 949-2126


For The U.S. Trustee:
Office of the United States Trustee
By:  BRIAN S. MASUMOTO, ESQ.
201 Varick Street, Room 1006
New York, NY 10014
(212) 510-0500

1        (Proceedings commence at 2:03 p.m.)

2            THE COURT:  Good afternoon.  Are the parties ready in

3   the Odonata case?

4            MR. PICK:  Good morning, Your Honor.  Douglas Pick,

5   Pick & Zabicki.  Ready.

6            MR. JOHNSON:  Good morning, Your Honor.  Kevin

7   Johnson, Hamra Law Group, for defendant.  Ready.

8            MR. MASUMOTO:  Good morning, Your Honor.  Brian

9   Masumoto for the Office of the United States Trustee.

10           MR. REICH:  Good afternoon, Judge.  This is Jeffrey

11  Reich from the Law Firm of Reich, Reich & Reich, P.C.  We

12  represent third-party defendant, Angel Nieves.

13           THE COURT:  Okay.  In our last meeting, there were

14  some open discovery items.  Have they been resolved?

15           MR. PICK:  No, Your Honor, they have not been.  Since

16  the last discovery conference that we had, Mr. Johnson sent me

17  an amended response dated December 6th.  The amended response

18  constituted four pages of objections to everything, but he

19  produced certain documents.  His limited production was

20  predominantly copies of the initial lease agreement, a copy of

21  the first amendment to the lease agreement, a copy of the

22  second amendment, some duplicate copies of other documents, but

23  only 11 pages of emails.

24           When I say 11 pages, one was an eight-page chain, one

25  was a three-page chain, and one was a copy of a letter that was

1  amended without providing me with the amended letter.  And

2  certain of the information we requested by way of example, we

3  requested documents concerning, you know, monthly rent

4  statements, invoices, and the like, relating to the

5  indebtedness from January 1, 2017, to the present, which goes

6  to the calculation of the damages.  The response that we got,

7  or we received from them is that the statements are irrelevant,

8  and that they do not have any copies with respect to apparently

9  the proof of damages.  I'm sure they have rent statements.  I'm

10  sure they have rent summaries, but none of that has been

11  provided.

12        We've asked for documents concerning the relationship

13  between the landlord and Mr. Hador and/or Meridian because of

14  the allegation initially that he was their agent, and then

15  we're told that they're going to take the position that he

16  wasn't their agent.  He deems all those requests irrelevant and

17  refuses to produce.

18        The comment he wrote to us in the objection was that

19  not only he finds it irrelevant, but using his words he said,

20  "There's no verbal formal agreement between them."  I don't

21  understand what no verbal formal agreement means.

22        But no, Your Honor.  Eleven pages, two email chains,

23  refused to provide anything else, is not responsive to

24  discovery demand.  And to say, you know, thereafter, I want to

25  talk to you about it, doesn't move the ball forward.  He's got

1  to produce first in order for us to discuss, you know, any

2  issues relating to discovery.  There was no attorney/client

3  privilege log that was included.  This is just a continuing

4  attempt to void providing disclosure.  Now, we have a scheduled

5  examination of Meridian for Friday, but without the discovery,

6  that seems to be a colossal waste of time again.  Thanks,

7  Judge.

8          THE COURT:  All right.  Mr. Johnson, what's going on

9  here?

10         MR. JOHNSON:  Yeah, I think -- well, there's a couple

11 of issues here with how Mr. Pick characterized things.  First

12 of all, after the last conference, I did revise responses, at

13 least once on December 6th.  However, I asked to meet and

14 confer with Mr. Pick on December 1st, December 2nd, and twice

15 on December 6th.  I was told to not meet to confer.  So a

16 couple of those issues have come to light in the discovery.

17 But however, I have supplemented as of today.  Mr. Pick would

18 not meet and confer with me at all and sent me a very detailed

19 deficiency letter the end of last week, and I responded today.

20 I've supplemented by over 100 plus more documents including

21 some text messages and more email chains between the parties

22 and the third parties.

23         Regarding this confusion about indebtedness,

24 Mr. Pick's demands asks for indebtedness between my client and

25 the non-party witness, Yani (phonetic) Hador and Meridian.  And

1   I pointed out in my second supplemental responses that my

2   client was introduced to Mr. Hador by email March 10th, 2021.

3   So of course, there are no indebted documents or formal

4   agreements between Meridian and the Defendant before that time,

5   or nor any afterwards.  Everything was done by email.

6           So I made three attempts to have a meet and confer to

7   sort of discuss the nuances of what Mr. Pick was asking for.

8   It seems to be that he believes certain documents exist that do

9   not in regards to any indebtedness to -- from Plaintiff to

10  Defendant.  Those have been previously disclosed during the

11  pendency of litigation.  I'm not sure what new documents he's

12  looking for at this point.  I did send over for instance checks

13  of UNO that have been coming in.  I sent one of those with my

14  new supplementary responses.  But, you know, the supplementary

15  responses nearly doubled in size in terms of PDF pages

16  responded to.  We feel we've given what we have and what is

17  discoverable.  Insomuch as there's some sort of indebtedness

18  that he's looking for between the parties, yeah, I can't prove

19  a negative.  He wants documents that don't exist.  I can't

20  (indiscernible).

21          THE COURT:  Are there documents -- are there

22  documents you have that he has requested that you are refusing

23  to turn over on grounds of relevance?

24          MR. JOHNSON:  No.  I don't have any documents that

25  he's requested that I haven't turned over.  What I have is what

1   he has.

2            THE COURT:  So what is the point of all your

3   relevance objections then?  You haven't withheld anything on

4   those grounds?

5            MR. JOHNSON:  Well, my thought, I suppose it was

6   prophylactic in some sense because there were a couple of

7   demands that were just overly broad and irrelevant basically

8   saying, well, listen; every communication between Meridian,

9   Yani Hador and my client.  But again, I -- that objection

10  doesn't really matter on the face of the email on March 10th,

11  2021, whereby my client and Mr. Hador actually meet for the

12  first time.  So insomuch as they didn't even know each other

13  prior to the time in which Mr. Pick is asking for, they both

14  don't exist.  I would say it would be irrelevant to the case.

15  I don't think it goes as far as the fraud allegations, but they

16  don't exist.  My client didn't meet Mr. Hador until March 10th,

17  2021, which is Bates stamped and delivered to Mr. Pick, that

18  email.

19           So when he asked for documents back to 2017, they

20  simply don't exist because these two people didn't even know

21  each other.

22           THE COURT:  Okay.  Well, how about since the time

23  they knew each other?  Have you produced all of their

24  communications?

25           MR. JOHNSON:  Yes.  And since the litigation, they --

1  Mr. (indiscernible), the principal at Baja, hasn't been

2  communicating directly with Yani about the case at all.  And

3  litigation started originally, you know, over a year ago now.

4          THE COURT:  Mr. Pick, what exactly is it that you

5  think must exist that hasn't been produced to you?

6          MR. PICK:  Well, the documentation that he's

7  referring to now, I -- and I'm seeing it for the very first

8  time, but I haven't opened it up yet, sent to me at 1:46, ten

9  minutes before we got on this call with the Court, so I don't

10 know what he sent me.  I don't know what he hasn't sent me.

11         I do know that there have been communications between

12 Mr. (indiscernible) who's the landlord, and Meridian.  I do

13 know they have not been provided.  What we wanted was

14 everything Bates marked so that we would have it for the record

15 and for trial so that we're not surprised at trial with an

16 allegation that something was provided when it was not

17 provided, or vice versa.

18         THE COURT:  How do you know that -- how do you know

19 there were communications that haven't been provided?

20         MR. PICK:  We have -- in the state court action, we

21 had gotten discovery from Baja that we used in furtherance of

22 summary judgement.  We asked for much of those documents again,

23 but to be Bates marked so it was to be clear and see if there's

24 anything else that hasn't been produced previously.  We didn't

25 get anything the first go-around.

1    The second go-around, we did get 11 pages of emails.

2 Well, I should say ten pages, and a copy of a letter.  But in

3 going through it, we could see easily that documents were

4 missing.  So for example, he sent over to us the third

5 amendment to the lease agreement.  But the one he sent over to

6 us in responsive to our discovery demands was totally unsigned

7 and Bates marked.  The one that we provided to him was signed

8 by us with a guarantee that was signed by us, wasn't provided.

9 There was a letter that he sent over to us in which he X'ed out

10 a date on the letter.  That amended a prior letter that didn't

11 have it X'ed out that we know existed because we have a copy of

12 it.

13    So what we're concerned about is what other documents

14 haven't been provided, and what documents is he going to argue

15 against our use at trial (indiscernible).  We just want

16 everything Bates marked.

17    In addition, the rent statements, they were never

18 produced prior.  But clearly, they exist.  You know, how he

19 calculated the rent, the rent summaries.  Some of the documents

20 -- demands our client has, but we want to see what their files

21 reflect.  Again, not produced because he deemed it irrelevant.

22    MR. JOHNSON:  And this is getting out of hand.  Your

23 Honor, I'm sorry.  I have to interject here.  First of all,

24 everything has been Bates stamped.  What Mr. Pick is referring

25 to is that he asked for drafts of things.  So yes, he got

1   unsigned documents because those were drafts and had been

2   marked off, as he mentioned.  He wanted drafts and every

3   possible markup that we had done.  We had given the signed

4   documents.  We had given draft documents.  Everything has been

5   Bates stamped.  It's all Bates stamped between something like

6   two -- I'm looking at the PDF now -- something like 224 pages.

7   They're all Bates stamped.

8           As far as the rent ledgers, those were disclosed up

9   and to the moment of remand.  No letters have been reproduced

10  since UNO being paid.  Those were produced in discovery.  In

11  fact, there's a motion practice on it.  It's so discoverable,

12  there was, you know, official court records in the underlying

13  action.  So when he says things aren't Bates stamped, I don't

14  know what he's really referring to that the thinks he doesn't

15  have.  Again, he wants drafts, and now he's upset that the

16  drafts don't look like the other things.  That's how drafts

17  work.  So we gave you everything, even the drafts you wanted.

18  They were marked up.

19          So I can't really even say what his issue at this

20  point is.  I think saying things aren't Bates stamped is

21  getting too dishonest at this point.  So perhaps he can point

22  to something specific in the record, what he sees something

23  missing.  I don't know.  I'm at a loss, Your Honor.

24          MR. PICK:  I'm looking at the discovery he provided

25  me just now.  It looks like the same exact discovery.  You

1 │ know, maybe he added some more pages to it, but it looks like

2 │ -- I'm just looking at it again now.

3 │       MR. JOHNSON: The previous Bates stamps went to 103.

4 │ These Bates stamps go to 218. So yes, it is from 1 to 103, of

5 │ course, same Bates stamps, same documents, and then from 104 to

6 │ 218, doubling the amount of documents, so I wouldn't say that's

7 │ the same thing.

8 │       MR. PICK: There's nothing in here. Just quickly,

9 │ there's nothing in here about rents and what's been paid and

10 │ what hasn't been paid or how you calculate your damages.

11 │       MR. JOHNSON: Already been given over. Already been

12 │ given over.

13 │       MR. PICK: It's not here. I'm looking at it now.

14 │ Again, this is --

15 │       THE COURT: Where and when has it been given over,

16 │ Mr. Johnson?

17 │       MR. JOHNSON: Yeah, so -- and let me pull up the

18 │ prior case (indiscernible) so I can get accurate dates to Your

19 │ Honor. Just one moment. Bear with me.

20 │     (Pause)

21 │       MR. PICK: And while he's looking that up, I think at

22 │ the last hearing, I thought Mr. -- and I may be wrong, but I

23 │ thought Mr. Johnson said there was no text messages. Now all

24 │ of a sudden, I see a text message. One text message.

25 │       MR. JOHNSON: There's one. There is one.

1          MR. PICK:  Just one.

2          MR. JOHNSON:  The -- and I was discussing, Mr. Pick,

3   text messages between Yani Hador and my client, not between

4   Angel Nieves and my client, so just be specific there.  Your

5   Honor, during the last time, I believe tenant ledgers were sent

6   or discoverable in the prior action were during motion practice

7   for UNO back in November of 2021 where rent ledgers went out at

8   that time and were made a part of the public record.  A rent

9   ledger was again filed with the courts in February 20 --

10  February 21st, 2022, in regards to a UNO, a third-party case

11  against Mr. Angel Nieves.  Another rent ledger was filed in

12  March 2022.

13          THE COURT:  These filings you're talking about, are

14  these the only rent ledgers you have?

15          MR. JOHNSON:  Yes, they were produced.  You know, my

16  client's now producing them every month, the rent ledgers, I

17  imagine because of the ongoing litigation is not -- there's a

18  dispute as to what's owed, right?  So -- and there's even

19  dispute as to what terms the old contract also may determine

20  how much rent will be and what fees and costs are associated

21  with holding over.  So all those things are in some form of

22  flux.  The last time a rent ledger was produced on the other

23  side was -- appears to be March of 2022.

24          And so (indiscernible) I can get him a new rent

25  ledger.  I'll have my client produce one certainly if

1   necessary.  Do not believe there's one currently produced since

2   the last one filed with the Court in the case -- the lower

3   Court case.

4           THE COURT:  So your client is not creating any

5   records of rent since March of 2022?

6   `       MR. JOHNSON:  Well, my understanding from them,

7   typically when we were doing these motions, he would put them

8   together based on the last time he put them together, sit down.

9   He'd enter the rents that were due under the lease and put them

10  together as needed in these cases.  Certainly, if we want to

11  put another one together, I'm happy to produce one for Mr. Pick

12  of that, and we certainly have to do that before trial.  So,

13  you know, I'll be guided accordingly on that, but he is not

14  contemporaneously producing them if that's the question.

15          THE COURT:  Where does he get the information that he

16  uses to produce them?

17          MR. JOHNSON:  Well, I suppose since the amount of

18  monthly rent is disputed, he uses the rent that was laid out in

19  the second amendment to lease that was active at the time

20  litigation was began in this case.  And he adds in as he's

21  gotten the checks for UNO that have been coming to him from

22  Plaintiff.  So that's the only information.  Other than that --

23          THE COURT:  Are you saying that he recreates these

24  from scratch or that he --

25          MR. JOHNSON:  No, he builds on the last one as

1  needed.  So when it --

2          THE COURT:  Then he updates that from scratch, or he

3  has other records that he looks at?

4          MR. JOHNSON:  He updates from the prior spreadsheet,

5  right?  So if we produce one for instance in March 2022, I'll

6  certainly circle back with my client to see when the last time

7  these computed damages were.  But the next time he were to

8  produce that, he would have worked backwards from March 2022.

9  Does that make sense?  So it's an ongoing spreadsheet.  It's

10 the same document that we've produced every time.  It's just

11 been updated as necessary for either the motion practice or

12 computed damages in discussing potential settlement.  So it's

13 not starting from scratch.  It's mostly just building on the

14 same old spreadsheet.  It's simply plugging in numbers as

15 needed.

16         I guess my point being that my client isn't seeing

17 their -- you know, doing that every month, per se.  But it's

18 not starting from scratch.  It's the same document that he goes

19 on.

20         THE COURT:  Let me understand your position.  You're

21 -- are you telling me -- I'm going to take this as a

22 representation by you on the record.  Are you telling me that

23 you have produced all documents responsive to Mr. Pick's

24 request?  You have withheld only on the grounds of privilege.

25 You have not withheld on grounds of relevance or other

1    argument.  Is that what you're telling me?

2            MR. JOHNSON:  Well, I'd say after this conversation

3    then I should certainly amend my response and get a recent rent

4    ledger to Mr. Pick.  That certainly needs to be done, and have

5    my client update his records so that they're accurate as of the

6    date of disclosure.  I am not withholding any documents based

7    on relevance at this point.  I have produced all the documents

8    I have other than the rent ledgers we just discussed.

9            THE COURT:  Have you withheld any on grounds of

10   burden or any other -- any objection -- have you withheld

11   documents on the ground of any objection other than privilege?

12           MR. JOHNSON: No.

13           THE COURT:  And have you withheld documents on

14   grounds of privilege?

15           MR. JOHNSON:  No.

16           THE COURT:  So you haven't withheld any documents

17   that he's requested, period, notwithstanding your objections.

18           MR. JOHNSON:  Right.  I think the dispute here seems

19   to go -- and I agree.  That's what I'm saying, Your Honor.  I

20   guess he seems to go to the -- you know, Mr. Pick's theory is

21   about fraud in this case seem to need some sort of

22   conspiratorial actions between Mr. Hador, Meridian, and my

23   client.  And the truth of the matter is my client and Mr. Hador

24   didn't meet per the emails that we've disclosed, Mr. Hador has

25   disclosed, until March of 2021.  So it's simply not the case

1  that there was this long history between Mr. Hador and my

2  client that was going on before he was involved in these

3  premises.

4          THE COURT:  All right.  Well, Mr. Pick, he's told me

5  that he claims he's produced everything without withholding

6  anything.  You can certainly explore that with witnesses when

7  you take their depositions, but what else can I do at this

8  point?

9          MR. PICK:  No, I understand, Your Honor, and thank

10  you.  We are going to go look at what has been provided and

11  what hasn't been provided.  Unfortunately, having just gotten

12  the documents literally 14 minutes before Your Honor picked up

13  the phone precludes me from giving Your Honor any sort of

14  update on what's missing here.  I don't have -- and I assume he

15  will supplement the discovery by giving us all the rent

16  statements from 2017 current, and then all rent summaries.

17          We did have a summary page -- couple pages from the

18  landlord that listed the rents dating back to 2017 that was not

19  produced, so I didn't understand Mr. Johnson's comments about

20  creating documents after the fact.  They exist.  They're in the

21  computer and they were computer generated, so he has all the

22  records.  But, Your Honor, we're going to look at what's been

23  produced in the past.  We assume that to the extent that Mr.

24  Johnson has additional documents, he will provide it.  And to

25  the extent we discover there are documents that he didn't Bates

```
 1   mark and turn over to us, we'll report it to the Court.

 2              THE COURT:  Okay.  All right.  You've got depositions

 3   upcoming.  I want to make clear to you that no witness is to be

 4   responded -- or excuse me -- no witness is to be instructed not

 5   to answer a question on grounds of relevance.  The only

 6   acceptable ground on which to tell a witness not to answer is

 7   an assertion of privilege.  Is that clear?

 8              MR. JOHNSON:  Yes, Your Honor.

 9              THE COURT:  All right.  Is there anything else we

10   need to do today?  You have a discovery cutoff of the end of

11   the year.  Is that right?

12              MR. PICK:  The -- yes.  Yes, sir.  That's correct.

13              THE COURT:  Do you have your depositions scheduled on

14   dates that will permit that?

15              MR. PICK:  We have a deposition of Meridian scheduled

16   for December 16th.  Now we've got Christmas and other matters

17   between December 16th and December 30th.  It's only two weeks

18   there.  It's going to be -- now, we may have to move it into

19   January for the examination to be taken of Baja.  And

20   certainly, we're not going to have time for examinations of my

21   client before I finish the examinations of their client.

22              THE COURT:  All right.  I'll extend your discovery

23   cutoff to January 31st, okay?

24              MR. PICK:  Thank you, Judge.

25              MR. JOHNSON:  Thank you, Judge.
```

```
1              THE COURT:  Just submit -- just agree on a form of
2   order and submit it, okay?
3              MR. PICK:   Yes, sir.
4              THE COURT:  That way I won't feel like so much of a
5   scrooge for making you do your discovery during the holidays.
6              MR. JOHNSON:  Thanks, Your Honor.
7              THE COURT:  Okay.
8              MR. PICK:  Thank you, Judge.  We'll get the --
9              THE COURT:  Is there anything else for today?
10             MR. PICK:  No, sir.  Do you want to schedule another
11  conference date or just move forward?
12             THE COURT:  Did the existing -- the existing order,
13  this was the kind of interim conference.  The existing order
14  had a final pretrial I think for January.
15             MR. PICK:  January 23rd.
16             THE COURT:  Yeah.  You should just talk with Lorraine
17  afterwards and pick a date for the -- a new date for that final
18  conference.
19             MR. PICK:  Got it.
20             THE COURT:  Okay.
21             MR. JOHNSON:  Thank you, Judge.
22             THE COURT:  All right.
23             THE CLERK:  Judge, actually, it's January 24 at
24  10 a.m.
25             THE COURT:  Okay.  Well, if we -- then if we extend
```

1   discovery until January 31st, we should change that January

2   24th date to a date in February.

3               THE CLERK:  Do you want me to give you a date now?

4               THE COURT:  Sure.  Go ahead.

5               THE CLERK:  February 15th at 10.

6               MR. PICK:  February -- that's good with me, Judge.

7               UNIDENTIFIED:  Thanks, Judge.

8               MR. JOHNSON:  That works for me, Judge.

9               THE COURT:  Okay.  All right.  If there's nothing

10  else, then we are adjourned.

11              UNIDENTIFIED:  Thanks, Judge.  Have a good afternoon.

12  Bye.

13              MR. JOHNSON:  Thanks, Judge.  Bye-bye.

14              MR. PICK:  Thank you.

15              THE COURT:  Bye-bye.

16         (Proceedings concluded at 2:30 p.m.)

17                          *  *  *  *  *

18

19

20

21

22

23

24

25

# C E R T I F I C A T I O N

I, Lisa Luciano, court-approved transcriber, hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, to the best of my ability.

*Lisa Luciano*

_____

LISA LUCIANO, AAERT NO.  327          DATE:  December 16, 2022

ACCESS TRANSCRIPTS, LLC